September 24, 1979

**79-70 MEMORANDUM OPINION FOR THE LEGAL ADVISER, DEPARTMENT OF STATE**

**Conflicts of Interest—18 U.S.C. § 207—Former Executive Branch Officer**

This memorandum responds to your June 5, 1979 request for our opinion on the applicability of 18 U.S.C. § 207 to Mr. A, a former Department of State officer who has been approached by the Government of the Republic of Panama to represent Panama in connection with legislation being considered by Congress to implement the 1977 Panama Canal Treaty. As explained below, we conclude that, although § 207(a) bars Mr. A from representing the Government of Panama before the other branches of Government in this matter, it does not bar him from undertaking legislative activity on Panama's behalf.

### I. Facts

The facts, as we understand them, concerning Mr. A's relationship to the original Panama treaty negotiating process appear in a July 13, 1979 memorandum ("the memorandum") submitted to us by his firm. As stated in the memorandum, Mr. A served from late 1974 until early 1976 as an Assistant Secretary of State, and thereafter, until December 31, 1976, as an Under Secretary of State. At that time, negotiations with representatives of Panama concerning the treaty were "the direct and sole responsibility" of Ambassador Ellsworth Bunker. Mr. A played no part in the negotiations. According to the memorandum, Ambassador Bunker's office was not itself under Mr. A's supervision, although the Ambassador's negotiating staff included personnel who were under Mr. A's supervision.

Ambassador Bunker's negotiating instructions from the President were developed through a process of interagency consultation. Mr. A participated with others in the development of Department of State policy positions on the issues under consideration. According to the memorandum: "The primary issues considered in the treaty negotiations during Mr. A's

373

tenure in the government were procedural issues—*i.e.,* issues relating to the pace of the negotiations." In this connection, he accompanied other officials on a visit to Panama, and participated in discussions with General Torrijos on the pace of negotiations. He also participated in conveying to General Torrijos the support of the Joint Chiefs of Staff for the two Panama treaties.

Mr. A, both during and since his Government service, has testified before both Houses of Congress and has spoken publicly about the significance of the Panama negotiations to United States relations with Latin America.[1] He met with a number of Senate and House Members when Congress had before it several resolutions designed to stop the negotiations while they were in progress. Further, during his Government service and for several months thereafter, Mr. A served as a member of the Board of Directors of the Panama Canal Company, although, according to the memorandum, neither the Company nor its board played any role with respect to the treaties or implementing legislation.

According to the memorandum, Mr. A, while in Government service, obtained "relatively little confidential information on the Panama Canal treaties." The memorandum states that he possesses no confidential information gained while he was in the Government that is relevant to the implementing legislation now under consideration by Congress.

## II. Discussion

Whether Mr. A may lawfully represent Panama during Congress' consideration of legislation implementing the Panama Canal Treaty depends on the applicability of 18 U.S.C. § 207 (1976).[2] In pertinent part, § 207 provides criminal sanctions for:

> (a) Whoever, having been an officer or employee of the executive branch of the United States Government * * * after his employment has ceased, knowingly acts as agent or attorney for anyone other than the United States in connection with any judicial or other proceedings, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter involving a specific party or parties in which the United States is a party or has a direct and substantial interest and in which he participated personally and substantially as an officer or

---

[1] In connection with Mr. A's public speeches in support of the treaties since he left the Government, the State Department has informed us that it furnished him with material that was otherwise publicly available, but that he was acting in a personal capacity in these efforts. We further understand that Mr. A was one of several experts, both pro and con, consulted by a Senator as he developed his position on treaty ratification; again, the Department of State furnished Mr. A with certain otherwise publicly available information in connection with his activities.

[2] Except as otherwise noted, references in this opinion to 18 U.S.C. § 207 apply to that statute as written before July 1, 1979. Section 207 has now been amended, effective July 1, 1979, by the Ethics in Government Act of 1978, title V, Pub. L. 95–520, 92 Stat. 1864.

employee, through decision, approval, disapproval, recommendation, the rendering of advice, investigation, or otherwise, while so employed. * * *

Whether § 207(a) bars Mr. A's proposed efforts on behalf of Panama thus depends on whether proceedings involving implementation of the Treaty would, in any respect, be covered by the statute and, if they would, whether the statute reaches legislative activity in connection with this matter.

## A.  Treaty Implementation Covered by § 207(a)

Although we have carefully considered the views of Mr. A's firm on these questions, we conclude, first, that the implementation of the Panama Canal Treaty, at least as it may involve judicial proceedings or proceedings before the executive branch of Government, is a "particular matter" involving specific parties in which the United States is a party and has a direct and substantial interest and in which Mr. A participated personally and substantially as an officer of the U.S. Government.

First, although Mr. A did not actually participate in treaty negotiations, he did participate in formulating the Department of State's—and thereby the United States'—position with respect to the treaty. Such activities would be encompassed within the terms "recommendation" and "rendering of advice," which are among the enumerated methods of participation covered by the statute. It is irrelevant that many other Government officials participated, or, given the overall significance of the treaties, that the policy issues during Mr. A's tenure were, in some sense, "procedural." He headed an office within the Department of State that was keenly interested in the negotiations. The policy input of a person in this position must be regarded as "substantial participation" under § 207(a).

We further conclude that the treaties with Panama constitute a "particular matter involving a specific party or parties." Unlike general legislation or rulemaking, treaties are intended to affect specific participating parties, namely, their signatories. In form, treaties closely resemble contracts, which are expressly covered by the statute. They are signed after the type of quasi-adversarial proceedings or negotiations that precede or surround the other types of "particular matters" enumerated in § 207(a). The phrase "involving a specific party or parties" has been read to limit the section's concern to "discrete and isolatable transactions between identifiable parties." B. Manning, *Federal Conflict of Interest Law* 204 (1964). Such a characterization aptly describes the treaty negotiation process.

Finally, we conclude that any proceeding involving the executive branch of Government, the branch which negotiated the treaty, or any judicial proceeding that concerns the implementation of the treaty would be the same matter or "particular matter" as the negotiation with which Mr. A was associated. From a review of the treaty, it is evident that both parties understood the necessity of subsequent steps by the United States to set the *de facto* terms, as well as the tone, of the two nations' agreement. Articles III

and IV of the Panama Canal Treaty, "Canal Operation and Management" and "Protection and Defense," respectively, leave the United States free to exercise its responsibilities under the treaty as it chooses, subject only to general principles and requirements. 77 Dept. of State Bull. 485–488 (1977). Any "judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, charge, accusation, arrest, or other particular matter" specifically involving the Governments of Panama and the United States as parties, concerning the implementation of the treaty, must be viewed as part of the last stage of the single negotiating or diplomatic process by which the nations reach their final agreement.

## B.   Legislative Activities Excluded from § 207(a)

The question remains, however, whether—notwithstanding our conclusion that a proceeding that concerns implementation of the Panama Canal Treaty and involves specific parties would be part of the same particular matter involving specific parties with respect to which Mr. A had personal and substantial responsibility while in office—§ 207(a) is inapplicable because Mr. A's proposed activities would solely involve Congress' consideration of proposed legislation. On this issue, we agree with Mr. A's firm that wholly legislative activity is not barred by § 207(a).

Whether § 207(a) applies to legislative activity is not clearly settled either by the language or history of the statute. None of the kinds of proceedings specified in that statute is legislative in nature, and it is generally settled that proceedings, such as general rulemaking, that do not typically involve specific parties, are outside the ambit of § 207(a). *See* Attorney General's Memorandum Re the Conflict of Interest Provisions of Public Law 87–849, 18 U.S.C. 201 note (1976). It would appear reasonable to conclude, however, that some legislation, *e.g.,* private bills, would appear to be particular matters involving specific parties as to which application of the § 207(a) bar would advance the policy goals of the Act. The question of the statute's scope is, therefore, a close one.

We nonetheless conclude that legislative activity is not within the scope of "particular matters" covered by § 207(a). Assuming that, in theory, certain kinds of legislation could justly be described as proceedings "involving a specific party or parties," most legislation cannot. To bring within the ambit of § 207(a) those legislative activities that might be deemed to fall within the specified kinds of proceedings would require the drawing of some line to separate the exceptional categories of legislation from the typical legislative proceedings that more closely resemble general rulemaking. Congress has not, in § 207(a), made any attempt to draw such a line. It would be inappropriate, in construing a criminal statute, to infer a nonobvious distinction between permissible and proscribed activity that Congress has not squarely considered and that would render uncertain the

376

applicability of the criminal sanctions involved.[3] This is especially so in an area where the activities proscribed by statute are not among those that led Congress to enact the prohibition.

In this connection, although the acts of a subsequent Congress do not control the interpretation of an earlier statute, it must be noted that Congress, in 1978, specifically amended § 207(a) in a way that expressly excludes legislative activity.[4] In so doing, Congress acted on the apparent assumption that it was clarifying, not changing, pre-existing law in this respect. The assumption is evident, first, in a report of the Senate Committee on Governmental Affairs that interpreted a proposed new version of § 207 that would not have changed the language of § 207(a) with regard to the inclusion or exclusion of legislative activity. The Committee said, with respect to the proposed revision:

> A former official is also allowed [under § 207(a)] to appear before Congressional committees and give testimony even on particular matters involving specific parties in which he participated personally and substantially while in office. [S. Rept. No. 170, 95th Cong., 1st sess. 152 (1977).]

Because Congress had not yet rewritten § 207(a) to make the exclusion of legislative activity express, the Senate committee's interpretation must have reflected its understanding of the range of proceedings covered by the language of the former § 207(a).

---

[3] The legislation history of § 207(a) strongly supports the conclusion that Congress did not consider the applicability of the postemployment ban to legislative activity. The language of both the House and Senate reports emphasizes Congress' concern with "judicial as well as administrative proceedings," H. Rept. 748, 87th Cong., 1st sess. 11 (1961); see also S. Rept. 2213, 87th Cong., 2d sess. 5 (1962), excluding, by implication, any consideration of the legislative forum.

[4] As amended, § 207(a) now provides criminal sanctions for:

Whoever, having been an officer or employee of the executive branch of the United States Government, of any independent agency of the United States, or of the District of Columbia, including a special Government employee, after his employment has ceased, knowingly acts as agent or attorney for, or otherwise represents, any other person (except the United States), in any formal or informal appearance before, or, with the intent to influence, makes any oral or written communication on behalf of any other person (except the United States) to—

(1) any department, agency, court, court-martial, or any civil, military, or naval commission of the United States or the District of Columbia, or any officer or employee thereof, and

(2) in connection with any judicial or other proceeding, application, request for a ruling or other determination, contract, claim, controversy, investigation, charge, accusation, arrest, or other particular matter involving a specific party or parties in which the United States or the District of Columbia is a party or has a direct and substantial interest, and

(3) in which he participated personally and substantially as an officer or employee through decision, approval, disapproval, recommendation, the rendering of advice, investigation or otherwise, while so employed; * * *

The Office of Government Ethics regulations interpreting the new § 207(a) specifically permit legislative activity. 44 F.R. 19979 (1979), to be codified at 5 CFR § 737.5(c).

This conclusion is buttressed also by the premise stated throughout the legislative history that, insofar as § 207(a) was being revised substantively, the new conflict of interest provisions would be more stringent than the old. *See, e.g., id.* at 32. If the former version of § 207(a) included legislative activities, the new version would in fact be more lenient in this regard.

We conclude that Congress' understanding in 1978 concerning the scope of § 207(a) was correct. The language of § 207(a) necessarily excludes most legislation from the kinds of matters it covers, and no guidance appears that suggests a line to be drawn between different kinds of legislative activity with respect to the applicability of the statute.

## Conclusion

For the foregoing reasons, we conclude that Mr. A may participate in legislative activities connected with implementing the Panama Canal Treaty.[5] It should be noted that our interpretation of § 207(a) would bar his representation of Panama before the judicial or executive branches in any proceeding connected with the implementation of the treaty.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[5]This Office has not considered the effect, if any, of the Code of Professional Responsibility in the present context, either with respect to any steps that may be required of Mr. A to preserve the confidences and secrets of his former client, the United States, *see* Canon 4, or the effect, if any, of his past and present relationship with that client on his ability to exercise fully independent professional judgment on behalf of Panama. *See* Canon 5.